STATE OF MAINE                                      SUPERIOR COURT
CUMBERLAND, ss.                                     CIVIL ACTION

STATE OF MAINE
Cumberland, ss, Clerk's Office
SUPERIOR COURT

SEP 01 2006

RECEIVED

DOCKET NO: CV-05-680

RAC-CUM 9|1|06

LINDA L. DOUGHTY

                    Plaintiff

                                                    ORDER ON DEFENDANT'S
                                                    MOTION FOR SUMMARY
                                                    JUDGMENT
        v.


STATE FARM INSURANCE COMPANY
                    Defendant


        This case comes before the Court on Defendant's Motion for Summary

Judgment pursuant to M.R. Civ. P. 56. For the reasons stated below, Defendant's

Motion is DENIED.

                              BACKGROUND

        On October 2, 1998, Plaintiff, Linda Doughty ("Doughty"), was injured in

an accident in which her vehicle was hit by a car driven by Jason LePage, who

had insufficient insurance coverage. Defendant, State Farm Insurance Company

("State Farm"), provided Doughty's motor vehicle policy. Following the

accident, Doughty complained of headaches, as well as back and arm pain.

Through treatment with physicians and physical therapists, most of Doughty's

symptoms began to improve or resolve several months after the accident. She

still complained of pain and numbness in her left arm, however, and continued

chiropractic treatment. Her medical payments coverage with State Farm paid for

her various medical expenses. In February 1999, Doughty underwent an

                                    1

independent medical examination at State Farm's request. After this consultation, State Farm informed Doughty that it would not pay for any medical treatment after March 30, 1999.

On May 13, 1999, State Farm offered to settle Doughty's claim for $2,000, in addition to the $2,174.80 it previously sent to her treatment providers. Doughty did not respond, and State Farm reiterated this offer on September 7, 1999. On April 2, 2004, State Farm offered $2,800 to resolve the claim after a second review of her file.[1] According to Doughty's letter of June 28, 2004, she disagreed with State Farm's interpretation of her doctors' diagnoses and with their estimate of her claim's value, and sought a more reasonable offer. State Farm ultimately paid Doughty $2,800 on September 8, 2004, stating in its correspondence that the parties had "reached an impasse;" that the company was tendering the amount "reasonably owed" under the uninsured motorist policy; and that Doughty was free to pursue other avenues of relief.

Doughty brought suit by Complaint filed on November 16, 2005. State Farm raised the statute of limitations as an affirmative defense. Because the claim involves underinsured motorist coverage, the statute starts to run when the insurer "breaches" the insurance contract by denying liability or refusing to conclude the claim to the insured's satisfaction. State Farm filed this Motion for Summary Judgment, arguing that the parties were unable to agree on a resolution by September 7, 1999, so the statute of limitations expired on September 7, 2005, and the suit is time-barred. Doughty, however, argues that

---

[1] It is unclear from the record whether State Farm was simply attempting to resolve an old claim, as defense counsel suggests, or whether correspondence from Doughty prompted this review. Apparently, the April letter contained some explanation for State Farm's valuation of the claim, but the parties cannot locate a copy of it.

she was still treating when the first offers were made and thought that it was possible to resume settlement negotiations after 1999. She contends that the statute did not start to run until September 8, 2004, when State Farm made its $2,800 payment and she knew that she would not be able to resolve her claim without litigation.

## DISCUSSION

### 1. Summary judgment standard.

Summary judgment is proper where there exist no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *see also Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶4, 770 A.2d 653, 655. A material fact is a fact that has "the potential to affect the outcome of the suit." *Burdzel v. Sobus*, 2000 ME 84, ¶6, 750 A.2d 573, 575.

### 2. Statute of limitations.

The limitations period for a breach of contract is six years. 14 M.R.S.A. §752 (2005). In uninsured motorist cases, the Law Court has held that the statute does not run from the date of injury, as in a typical personal injury suit; instead, it begins to run once the insurer refuses to provide benefits or declines to resolve the claim. *Palmero v. Aetna Casualty & Surety Co.*, 606 A.2d 797, 799 (Me. 1992). The Court adopted this rule because uninsured motorist claims are more properly considered insurance contract claims rather than tort claims, *Id.* at 798, and a breach of contract statute of limitations starts to run from the date of the breach. *Manning v. Perkins*, 86 Me. 419, 421 (1894). The difficult issue in this area has been determining when a breach of the insurance contract occurs. Commentators suggest that "once an insured learns that the insurer has rejected his demands, his cause of action accrues as of that moment, regardless of

3

whether the refusal falls short of an unequivocal denial." Simmons, Zillman & Gregory, *Maine Tort Law* §18.08 at 18-39 (2004 ed.).

In *Palmero*, the plaintiff was injured in a car accident with an uninsured motorist in 1984. 606 A.2d at 798. Three years later, her insurer denied that it was liable for her uninsured motorist claim. *Id.* The plaintiff sued in 1991, and the Law Court held that her suit was not time-barred because the statute did not run from 1984, when she was injured, but from the 1987 date on which her insurer denied coverage. *Id.*

Applying this rule, the Court held that the statute barred a claim where an injured plaintiff waited to file her uninsured motorist lawsuit until over six years following the collapse of negotiations. *Whitten v. Concord Gen. Mutual Ins. Co.*, 647 A.2d 808, 811 (Me. 1994). There, the Court noted that, although her insurers did not expressly disclaim liability, they did refuse the plaintiff's offer to settle more than six years before the suit was filed. *Id.* Citing policy concerns about prolonging claims, the Court directed the entry of summary judgment for the defendant insurers. *Id.*

Similarly, these parties disagree about when the breach occurred. Doughty contends that until State Farm paid her $2,800 in September 2004, she thought negotiation was possible. State Farm contends that the parties disagreed about resolving the case in September 1999. It points to Doughty's deposition testimony, in which she stated that she was "appalled" by State Farm's first offer.[2] Although she did admit that she thought imminent settlement was unlikely in 1999[3], it does not follow that at that time, Doughty knew with any

---

[2] Plaintiff's deposition, p. 33, line 17.
[3] Plaintiff's deposition, p. 34, line 6.

degree of certainty that she could not eventually counteroffer, or that she would have to file suit.

In addition, Doughty did not reject the first offer, as the plaintiff did in *Whitten*, nor did State Farm deny liability, as occurred in *Palmero*. Doughty did express her unwillingness to settle for the amount State Farm offered in 2004, after having undergone additional medical treatment for thoracic outlet syndrome. Moreover, State Farm conducted an additional review of Doughty's file in 2004, which could reasonably have indicated to her that she might possibly resolve the case without litigation even five years after the initial offer.[4]

Although State Farm claims that a stalemate existed in 1999, it did not relay that to Doughty until five years later, after sending her a payment that exceeded the prior offer by $800. If State Farm believed there was no possibility of negotiation prior to that payment, it likely would not have engaged in subsequent reevaluation of her claim. At least, the company should have notified Doughty more explicitly in 1999 that it would not change its stance.[5]

The policy concerns underlying the statute of limitations are significant, but the insurer's responsibility to clarify the point at which it refuses to negotiate outweighs those concerns in this case.[6] While the Law Court does not require an absolute refusal to pay, the insurance company more appropriately bears the burden of clarifying its position for the insured in uninsured motorist cases

---

[4] State Farm's September 8, 2004 letter even concludes by saying: "This claim remains open subject to a final determination of damages. If you wish to discuss this matter further, please contact us."

[5] Additionally, Doughty understood that medical payments coverage would not pay for further treatment after the 1999 IME, but she contends that she did not know that this might affect her recovery under the uninsured motorist portion of the policy.

[6] The Complaint was filed merely two months after State Farm contends the time would have expired.

where a breach may be difficult to determine. State Farm easily could have done so in this case.

The breach occurred on September 8, 2004 and the statute of limitations did not start to run until that time; therefore, the Court finds that this claim is not time-barred.

The entry is:

Defendant's motion for summary judgment is DENIED.

DATE: _September 1, 2006_

Roland A. Cole
Justice, Superior Court

6

PETER CLIFFORD ESQ
56 PORTLAND ROAD
KENNEBUNK ME 04043

CHRISTOPHER DINAN ESQ
PO BOX 7046
PORTLAND ME 04112